IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE
NORTHERN DIVISION

| | | |
|---|---|---|
| LOUIS G. JONES, JR., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 3:22-cv-00341-TAV-DCP |
| | ) | |
| FORD MOTOR COMPANY, | ) | JURY DEMAND |
| | ) | |
| Defendant. | ) | |

**THE PARTIES' REPORT OF THE FED. R. CIV. P. 26(f) CONFERENCE**

Plaintiff Louis G. Jones, Jr., and Defendant Ford Motor Company submit this report of their discovery conference pursuant to Federal Rule of Civil Procedure 26(f). The parties conferred on Wednesday, December 7, 2022.

I. Theories of the Parties.

    A. Plaintiff's Theory of the Case.

Louis G. Jones, Jr. sustained serious and permanent injuries and damages resulting from a defective or unreasonably dangerous product, a 2016 Ford F-250 truck, when the driver's side front assist handle failed and detached from Mr. Jones' truck as he was entering the truck on July 26, 2019. Mr. Jones' truck and assist handle were in substantially the same condition as when they left the manufacturer, Ford Motor Company, except for normal wear and tear.

    B. Defendant's Theory of the Case.

Ford Motor Company ("Ford") denies that the 2016 Ford F-250 truck was defective or unreasonably dangerous when it left its control. Ford asserts that the 2016 Ford F-250 truck was designed, manufactured and sold in conformance with the state of scientific and technological knowledge available to its manufacturer, and that it met or exceeded all applicable Federal Motor Vehicle Safety Standards. Ford avers that the incident was solely the fault of other persons,

including Plaintiff, and not Ford, or was the misuse, alteration, change, improper maintenance, abnormal use or failure to follow proper instructions and warnings.

The 2016 Ford F-250 truck has a Vehicle Identification Number of 1FT7W2BT4GEA95529. Plaintiff has alleged a defect regarding the front driver assist handle in the subject truck. Ford states that the proper scope of discovery for this case is the front driver assist handle contained in 2011-2016 Ford F-250/350/450/550 vehicles, manufactured and sold in the United States.

II. Fed. R. Civ. P. 26(f)(3) Discovery Plan Information and Proposals.

    A. Requested Changes to Rule 26(a) Requirements (Fed. R. Civ. P. 26(f)(3)(A)).

The parties have agreed to exchange Fed. R. Civ. P. 26(a)(1) initial disclosures on Monday, December 19, 2022.

    B. Subjects on Which Discovery May Be Needed and Discovery Cut-off Date (Fed. R. Civ. P. 26(f)(3)(B)).

As a part of the parties' planning meeting, the parties have discussed the 2015 amendments to the Federal Rules of Civil Procedure, particularly those to Rules 1 and 26.

The parties will generally conduct discovery on the circumstances of the incident, the nature and extent of Plaintiff's injuries and the claimed damages, the service and maintenance of the subject vehicle, and the design, manufacture and testing of the relevant components of the subject vehicle.

    C. Disclosure or Discovery of Electronically Stored Information (Fed. R. Civ. P. 26(f)(3)(C)).

The parties do not anticipate any issues concerning the disclosure, discovery or preservation of electronically stored information. The parties are aware of their preservation and discovery obligations under the Federal Rules of Civil Procedure. The parties have taken reasonable measures to preserve relevant documents, including electronically stored information ("ESI"), that

are maintained in locations and systems where such relevant information is likely to be found in accordance with the Federal Rules. The parties agree to engage in informal discussions and on-going meet-and-confer discussions regarding the discovery of ESI.

Method of Producing Electronic Discovery

Regarding the method of searching for ESI, the parties agree that the responding party is best situated to decide how to search for and produce ESI responsive to discovery requests. Consequently, the party responding to discovery shall determine the method used to search for and produce responsive ESI, and such methods shall be reasonable and proportional to the needs of the case.

Responsive electronic discovery shall be produced to the requesting party in a commercially reasonable manner or in the manner kept in the producing party's regular course of business, whichever is less burdensome and economical for the producing party. If a party requests documents that are stored in an electronic format, the disclosing party may provide the requesting party printed copies of the responsive documents or may provide the requesting party electronic copies of the responsive documents in a reasonably usable form on CD, DVD, hard drive, by e-mail, or by other electronic means.

Ford may also produce responsive documents in an electronic multi-page .tif format containing viewable images and corresponding OCR text load files that will allow Plaintiff to load these materials into a standard, industry-wide desktop document management program such as Summation or Concordance.

Regarding production by Ford, production formats may also include drawings in the form of .tif, .jpeg, .pdf files, etc., and CAD files such as IDEAS files, IDEAS NG files, CATIA, JT files, etc., or various combinations thereof. To the extent applicable, with respect to the CAD models

3

Case 3:22-cv-00341-TAV-DCP   Document 7   Filed 12/18/22   Page 3 of 11   PageID #: 35

referenced herein, Ford does not own the software to read these files. Ford does, however, use industry standard software that is commercially available to Plaintiff and his experts. Ford is contractually prohibited from reproducing the software to third parties as it is proprietary to the vendor. Ford will produce any CAD models subject to the parties' Stipulated Sharing and Non-Sharing Protective Order entered in this case. Likewise, Ford will produce any CAE and MADYMO models in the format in which they are utilized or stored in the normal course of business, which may require special software not licensed by Ford to be produced to third parties. MADYMO and CAE models are produced on CDs, in their native format, which require special software not licensed by Ford to be viewed. While Ford does not own these software programs, the programs necessary to run these models are commercially available from third parties. Ford also notes that many consultants are available to assist Plaintiff in viewing the models at issue. If during the pendency of this case, Plaintiff identifies certain CAD or CAE models that they cannot view, Ford agrees to meet and confer and explore alternative arrangements with Plaintiff.

<u>Cost and Burden of Producing Electronic Discovery</u>

To the extent the parties request files or copies of the documents, the parties agree that such requests shall be provided to the other party in the normal and traditional course of discovery, with the producing party bearing the cost of assembling the requests, except that Ford will seek reasonable reimbursement for production costs as described below. While Ford cannot determine in advance the cost of all of the documents until it receives discovery requests from Plaintiff, Ford offers the following cost estimations:

- Paper copies – standard (black/white)    $0.06 per page
- Paper copies – other    $0.18 per page
- Color copies – standard    $0.40 per page
- Duplicating DVD/CD    $10.00
- Drawings – per square foot    $0.84
- Digital copies – per CD/DVD    $10.00

4

- Tests (crash, sled, etc.) – cost dependent upon the number of media required to hold the requested tests
- CD (cost per CD)                                      $10.00
- DVD (cost per DVD)                                $10.00
- Videos (cost per VHS)                             $10.00
- Hard drive cost dependent upon size        TBD
- Other                                                 TBD

Electronic Discovery Sources

At this time, the parties do not know of any additional electronic discovery issues that may arise in this matter. If additional issues arise not governed by this plan, the parties agree to work in good faith to resolve the matter before bringing the issue to the Court's attention.

Ford discloses that it may support its claims and defenses using ESI located in, or reports generated from, the following databases:

- STEST/SPRITE contains certain data and reports on crash and sled tests.

- Ford's Global Contract Center Technology ("GCCT") application, which has replaced Ford's FMC360 application, which contains summaries of customer contact information from vehicle owners about their vehicles or sales experience.

- The Global Common Quality Indicator System ("CQIS") database provides access to selected vehicle concern information originating from dealerships and internal Ford sources.

- The Global System for Analytics and Reporting ("GSAR") database, which has replaced Ford's Analytical Warranty System ("AWS") database, contains warranty claims and selected vehicle information to support common global warranty reporting, analysis, and feedback processes for the model years 1991 and forward.

- Global Online Automotive Services Information System ("GOASIS") database provides dealers with selected vehicle and technical services information for a specific VIN, including Technical Service Bulletins ("TSB"), Special Services Messages ("SSM"), and General Service Bulletins ("GSB").

- The Worldwide Engineering Release System ("WERS") is an information system that manages and communicates parts information to organizations and downstream systems.

- DOCMAN/FORDDOC - The FORDDOC database is used to access engineering drawings and specifications (this database replaced and serves the same function as DocMan).

- Critical Concern Review Group ("CCRG") Report database contains copies of Critical Concern Review Group reports of potentially critical vehicle concerns.

- North American Vehicle Information System ("NAVIS") is an electronic data source containing selected sales and production information about vehicles manufactured by Ford Motor Company. Among other things, NAVIS includes certain data concerning sales of vehicles by Ford dealers.

- The Durability Information System ("DURIS") is used to track various types of vehicle durability testing, including Proving Ground test schedules, program status, vehicle incident and concern reporting, driver assignment, and test status.

Further, Ford uses other software tools, utilized throughout the automotive industry, for the design and development of its vehicles. Such software tools include computer-aided design tools, computer-aided engineering tools, and motion simulation tools. This software may be proprietary and licensed from third-party suppliers. UNIX systems and Numerically Intensive Computers are used to generate and/or store the ESI utilizing this software.

D. <u>Issues Concerning Privilege and Protection (Fed. R. Civ. P. 26(f)(3)(D))</u>.

A protective order will be necessary. The parties agree to submit a Stipulated Protective Order. Concerning the filing of documents under seal, the parties will comply with the Stipulated Protective Order and the Court's local rules.

The parties agree that there is good cause and there exist compelling reasons to seal portions of the trial transcript, trial exhibits, and deposition testimony referenced at trial which contain Fords confidential, proprietary, and trade secret documents that are protected from disclosure pursuant to the terms of the Stipulated Protective Order entered in this case.

<u>Privileged Data</u>

No party is required to conduct a search or prepare a privilege log for any discovery request or portion thereof to which objections have been made until the objections have been overruled and the right to object based on the attorney-client privilege or work product doctrine is preserved

6

until that time, and that in the event a privilege log is required, a categorical privilege log is permissible in this action.

The parties further agree that there is no duty to include on any privilege log, to the extent a log is required, those documents created after the filing of the original Complaint in this matter, including those documents created by Plaintiff's counsel, Ford's counsel, or Ford's Offices of the General Counsel (or those working under their direction or supervision) relating to the subject lawsuit or as it relates to any litigation file created or maintained by Plaintiff's counsel, nor is there a duty to log any litigation files created or maintained by Plaintiff's counsel, Ford's Counsel, or Ford's Offices of the General Counsel (or those working under their direction or supervision), including those files related to incidents other than the incident that is the subject of this lawsuit. Supplemental privilege logs may be provided as discovery continues. Any party may move the Court for an order compelling the production of any documents or information identified on any other party's privilege log. If such a motion is made, the party asserting the privilege shall have the opportunity to respond. If a party inadvertently produces information that is subject to a claim of privilege, the parties agree to follow the procedure set forth in Federal Rule of Civil Procedure 26(b)(5)(B).

  E.  Limitations on Discovery (Fed. R. Civ. P. 26(f)(3)(E)).

Regarding the allegations against Ford, the parties agree that discovery should be related to the components alleged to be defective by Plaintiff, particularly the front driver's assist handle in 2011-2016 Ford F-250/350/450/550 pickup trucks, manufactured and sold in the U.S.

### Discovery Limitations

The parties agree that discovery shall be reasonable and proportional to the needs of the case, and accordingly, should be limited as follows:

a. Interrogatories are limited to 25, including all parts and subparts.

b. Requests for Production are limited to 25, including all parts and subparts.

c. Requests for Admission are limited to 30.

d. Depositions are limited to the parties, experts, and fact witnesses.

e. Concerning depositions of Ford:

   i. Plaintiffs shall be limited to two depositions of Ford (one employee and one corporate designee). The corporate representative deposition shall not exceed 10 topics over the course of seven hours. No additional corporate representative depositions shall be allowed without a showing of good cause or by agreement of the parties. The parties further agree that the questioning party: (1) will serve a notice of deposition for any corporate representative deposition and such notice will identify with specificity the topics at issue; (2) will identify, in advance of the deposition, any exhibits to be used at corporate designee or employee depositions; (3) will not exceed the scope of deposition topics identified in the notice of deposition; (4) will not seek testimony that is considered "contention discovery," discovery on discovery, or materials reviewed by the witness in preparation for the deposition; and (5) will not seek testimony regarding other alleged incidents. The parties agree to the following process regarding objections to 30(b)(6) deposition notices. It is the obligation of the receiving party to object within the time for compliance with the notice. The burden is on the party requesting the deposition to move the court for a ruling on any objection the requesting party asserts is not well taken. If the requesting party does not pursue a ruling on the objections, the deposition shall

8

proceed on the topics to which no objection is raised. By agreeing to the foregoing procedure, the parties do not waive their right to file motions to compel and/or for protective order.

f. The identification of custodians of records are limited to two key custodians per side.

g. Fact depositions, including Rule 30(b)(6) depositions, Ford employees, or the depositions of Plaintiff, are limited to six witnesses per side.

h. Each side may identify up to three expert witnesses regarding liability issues and three expert witnesses related to damages issues, not including Plaintiff's health care providers.

i. Depositions of expert and non-party fact witnesses shall be limited to one day and a maximum of seven hours.

j. The parties agree that no discovery shall be conducted absent good cause shown as to topics relating to discovery on discovery, retention policies, search efforts, and/or documents or information that are classic work product or privileged such as materials generated by the attorneys in this case, Ford's Office of the General Counsel, and/or those working under their direction or supervision as a result of this lawsuit or those materials that are maintained in litigation files of any party.

k. If Plaintiff seeks discovery regarding other incidents, the parties agree production of a lawsuit and claims list is sufficient and no other materials will be sought or produced. The lawsuit list will contain, where applicable, the file name, jurisdiction, court, docket number, accident date, serve date, file status (i.e., pending or closed), Plaintiff(s)' attorney, model, and model year.

Any party may move to modify these limitations for good cause.

Authentication

The parties will meet and confer regarding trial exhibits to discuss authentication issues, and no discovery regarding these issues shall be sought or conducted. All potential discovery regarding authentication issues in this matter shall be reserved.

F. Other Orders (Fed. R. Civ. P. 26(f)(3)(F)).

The parties do not anticipate a need for any other orders.

III. Fed. R. Civ. P. 26(a)(2) Expert Disclosures.

The parties agree that the designation of expert witnesses should be staggered. Plaintiffs' expert witness reports and disclosures will be due on Wednesday, September 13, 2023. Defendants' expert witness reports and disclosures will be due on Friday, October 13, 2023. The parties agree to provide dates for the deposition of each expert witness at the time of their respective disclosures and to conduct the depositions remotely or to travel to each expert's location to conduct the depositions.

DATED this 18th day of December, 2022.

Respectfully submitted,

EGERTON, McAFEE,
ARMISTEAD & DAVIS, P.C.

By: /s/ Ronald T. Hill (by JRB with express permission, 12/07/2022)
Ronald T. Hill, B.P.R. No. 011283
Post Office Box 2047
Knoxville, Tennessee 37901
(865) 546-0500 (telephone)
(865) 525-5293 (facsimile)
rhill@emlaw.com

*Counsel for Plaintiff*

LEWIS THOMASON, P.C.

By: /s/ J. Randolph Bibb, Jr.
J. Randolph Bibb, Jr., B.P.R. No. 009350
424 Church Street, Suite 2500
Post Office Box 198615
Nashville, Tennessee 37219
(615) 259-1366 (telephone)
(615) 259-1389 (facsimile)
rbibb@lewisthomason.com

*Counsel for Defendant*
*Ford Motor Company*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and exact copy of the forgoing Rule 26(f) Report has been served upon the counsel for the parties in interest herein by operation of the court's electronic case filing system.

Ronald T. Hill, Esq.
B.P.R. No. 011283
EGERTON, McAFEE, ARMISTEAD & DAVIS, P.C.
Post Office Box 2047
Knoxville, Tennessee 37901
(865) 546-0500 (telephone)
(865) 525-5293 (facsimile)
rhill@emlaw.com

*Counsel for Plaintiff*

Dated this 18th day of December, 2022.

/s/ J. Randolph Bibb, Jr.
J. Randolph Bibb, Jr.

11